Appellant. Mr. Soshin for the Appellant. Mr. Ewing for the Appellee. Good morning. Mr. Soshin. Good morning, Your Honors. May it please the Court. The Appellant is raising two issues in this case. The first is the calculation of the sentencing guidelines, specifically the drug quantity weight in his guidelines. Second, he's also challenging a sentencing disparity in that the two co-defendants in the case, who are more culpable in the conspiracy than he, received shorter sentences. The Appellant recognizes in this case that he did get a significantly below guideline sentence. He's grateful for that, and he doesn't dispute anything in regards to that. However, he submits that the guidelines in this case should have still been correctly calculated, and that had they been calculated correctly in his favor, he could have received an even lower sentence. Specifically with the drug weight argument, Appellant claims that the fraudulent prescriptions attributed to Timothy Miloff should not have been attributed to himself. He had no conspiratorial involvement with Mr. Miloff. He didn't sell Mr. Miloff any prescriptions. He didn't conspire with Miloff to obtain any prescriptions. His only contact ever with Miloff was a chance encounter he had when Miloff was purchasing a prescription from another member of the conspiracy. The other and only other encounter he had with Miloff is when Miloff came into the doctor's office, presumably to obtain a fraudulent prescription from Monifa Ahmed. Appellant, my client, told Miloff that the other defendant was hot and could not prescribe prescriptions. That hot comment does not necessarily mean that the Appellant reasonably foresaw the scope of Miloff's conduct within the conspiracy. Merely tipping someone off is a tip-off. He didn't know if Miloff was there to obtain a prescription for his own personal use or to resell on the street. He didn't know what Miloff. There's no evidence that the Appellant was aware of the scope of Timothy Miloff's conduct in the conspiracy. The Appellant, for all he knew, could have thought that Miloff's first time trying to obtain a fraudulent prescription was that day. He didn't have any actual knowledge of previous purchases by Miloff or any other criminal conduct by Miloff. What was Miloff's testimony about that issue? Didn't he testify? No, this was a plea, so there was no trial testimony. There was grand jury testimony. But I thought testimony from Miloff was presented at the sentencing hearing. Am I wrong about that? The testimony from Miloff was in his statement of facts in Miloff's plea, which was entered into the record as part of Appellant's sentence. In his statement of facts in the pre-sentence report is where it listed or it stated that Miloff had stated in his own case. And what did he say about Appellant's knowledge or involvement? I believe he said that the only encounter, the only thing he ever did with Miloff was when he visited the doctor's office and Miloff said that Monif Ahmed was hot, that he didn't testify or state that he had purchased anything from Miloff, asked Miloff to buy anything from him, asked Miloff to obtain anything legally for him, for any of his friends. So there was that hot comment that Miloff testified to, and then the Appellant's presence when Miloff came in on another occasion. But the Appellant worked at this doctor's office, so it's not unusual that he would be there when Miloff came to obtain a prescription from the Secretary. The Appellant submits it, it's pretty attenuated, just tipping someone off like that to translate that into making the Appellant accountable for all of Miloff's conduct in terms of these fraudulent prescriptions. In regards to the second issue, the sentencing disparity issue, Appellant recognizes that he did have a higher criminal history than the other two, but his conduct was less culpable. It was stated on the record that at sentencing he was responsible for less prescriptions than the other two, yet he received a higher sentence. And that's all. I'll open it to questions. All right. If there are no questions, I'm going to reserve the remainder of your time for rebuttal. Thank you, Your Honor. Thank you. Good morning. May it please the Court, James Ewing for the United States. This Court should not disturb the District Court's below-guidelines sentence in this case. Appellant is underselling the amount of knowledge that he had regarding these Miloff transactions. Of course, this is the only guideline dispute that remains before this Court because Appellant largely prevailed on the contested issues in the District Court. The District Court only held him responsible for one-third, roughly a little bit less than one-third of the whole amount of the drugs involved in the conspiracy and found in his favor on both the acceptance of responsibility, two-point decrease, as well as that he was not a manager of the conspiracy. So he largely won when it comes to the contested issues in the case. As to the Miloff transactions, Appellant talked about these two aspects of what we would contend was actual knowledge of those transactions, that is, that Appellant was present for at least one of the transactions between Ahmed and Miloff. And second, this comment that Ahmed's hot, so we're done, meaning that she's not going to sell prescriptions to Miloff anymore. That comment only makes sense in the context of Appellant bias knowing what's going on between these two. Otherwise, under investigation or hot, for what? That comment doesn't make any sense unless bias has actual knowledge of the transactions between Miloff and Ahmed. And, of course, your opposing counsel's argument is that knowledge that there's something illegal going on or that she's selling prescriptions to Miloff perhaps for personal use. He doesn't know. Why is it, I guess, how is there sufficient evidence to say that it's foreseeable that all of Miloff's transactions would be attributable to Appellant? Well, I guess that's the second part of our argument, Your Honor. I mean, initially we would say the evidence demonstrates that he had actual knowledge of what's going on between Ahmed and Miloff. But that's not even required. I mean, in this context of where you have a drug distribution conspiracy, Ahmed's actions with Miloff only have to be reasonably foreseeable to Appellant bias. And they were, not only because of these two interactions that he had, but also he was living with Ahmed. So he's sharing money with her. She's sending money to his children. He, at one point, did a wire transfer on her behalf for some $3,000 to pay the mortgage on the house that they were sharing together. And during this time, he didn't have any reportable income. So we would say that he's got actual knowledge of these Miloff transactions. Of course, that's a higher bar than what's required by the case law. The district court found that. Yes, that's correct, Your Honor. And that's not disputed as a factual matter, as we just heard. But they were certainly reasonably, at the very least, they were reasonably foreseeable to him. What was the factual finding to which you just alluded? Your Honor, the factual finding was regarding the two, the issue of bias being present for one of the Miloff transactions, as well as the fact that he had warned Miloff that- I think it had something to do with bias's relationship with Ahmed that you were talking about. Well, right. I mean, bias's relationship with Ahmed was not disputed. I mean, they're living in the same house. They're sharing money. They have a child in common. None of that was disputed in the district court, and it's not disputed here. And Ahmed's volume was attributed correctly or correct to bias? Well, part of it was and part of it wasn't. I mean, the part- So the facts that you just recited were taken into account in attributing some of her volume to bias. Absolutely, Your Honor. How they extend to Miloff is less clear. Well, Ahmed was the one that was dealing with Miloff, though. Ahmed was dealing with Miloff personally. She was selling the prescriptions to Miloff for money. So it's really kind of a two-pronged argument from our perspective. Any evidence that she was selling to others, still others, beyond Miloff and Ahmed and- I mean, Miloff, bias, and the mother-in-law? Yes. There was another individual named Miguel Chalet, who was also- that Ahmed was involved in selling prescriptions to that individual as well. Was his volume attributed to bias? It wasn't. That was a little bit different, Your Honor. By the time the trial and eventually plea and sentencing came around, Mr. Chalet was incompetent. He had dementia, and so the district court actually made a ruling. This case was heading to trial before it pled, and the district court ruled that his statements regarding the transactions between- Chalet's statements, that is, regarding the transactions between himself and Ahmed would not be admissible at trial. I believe Mr. Chalet actually passed away at some point. So that was kind of the concept there. So really, you have the equivalent of 3,900 kilograms of marijuana total, and of that, the district court properly attributed 1,193 kilograms of marijuana to appellant bias, and that included the amount that was attributed to the Miloff transactions. There were more co-conspirators, right? Yes, Your Honor. There were a number. There were several more co-conspirators. I mean, I guess I don't want to limit it to just Chalet. There were-this was a relatively large drug transaction. Ahmed sat at the middle of it because she was the one that actually had the- she had worked for Dr. Uwe for quite some time and had access to this prescription pad, which was-that was this-that prescription pad was the center of the conspiracy. So we would contend that as to these Miloff transactions, that the state of the record indicates that appellant had actual knowledge of those transactions, but at the very least, they were reasonably foreseeable to him as a co-conspirator. If there are no further questions on that, I would turn briefly to the second argument regarding the sentence disparity argument, and we would simply note that 18 U.S.C. 3553A6 discusses treating individuals similarly who have committed similar conduct and have similar records. And these three appellants here did not have similar records. Ahmed was 40 years old with no criminal history. Ms. Nolan was 61 years old with no criminal history. Appellant Bias had three prior scorable convictions, including a felony fraud conviction for a total of four points, which put him into the Roman numeral category three for sentencing purposes. So they're simply-you're not even in 3553A6 land, really, at that point, because the three don't have similar records. So it made sense to treat them differently for sentencing purposes for that reason alone. If there are no further questions, we would ask that the judgment of the district court be affirmed. Thank you. Thank you. All right, Mr. Sochin, if you have any rebuttal, we'll hear you. In regards to the drug weight calculation, I point out that the district court did not find the prescriptions of Carolyn Nolan to be reasonably foreseeable to the appellant, and it's a similar situation. Nolan was more of an addict in this case. She wasn't really reselling the prescriptions. She was fueling her own addiction. That could have been the case with Mr. Milloff. The appellant did not know what Milloff was doing with the prescriptions. There's no evidence that he ever discussed this with Mr. Milloff or Mr. Milloff ever had any other contact with the appellant outside of those two instances. I'd ask the court to reverse and remand this case. Thank you. All right, thank you. We'll take the case under advisement. Thank you.
judges: Wilkins, Ginsburg, Randolph